**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| PATSY MARLIN MARANO | : | |
| | : | |
| Appellant | : | No. 270 WDA 2021 |

Appeal from the Judgment of Sentence Entered April 9, 2019
In the Court of Common Pleas of Fayette County Criminal Division at
No(s): CP-26-CR-0000384-2018

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| PATSY MARLIN MARANO | : | |
| | : | |
| Appellant | : | No. 271 WDA 2021 |

Appeal from the Judgment of Sentence Entered April 9, 2019
In the Court of Common Pleas of Fayette County Criminal Division at
No(s): CP-26-CR-0000385-2018

BEFORE: OLSON, J., NICHOLS, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.: **FILED: January 19, 2022**

Appellant, Patsy Marlin Marano, appeals from the judgments of sentence imposed by the Court of Common Pleas of Fayette County in two criminal cases following a consolidated jury trial at which he was convicted of attempted rape, involuntary deviate sexual intercourse (IDSI), sexual assault,

---

[*] Retired Senior Judge assigned to the Superior Court.

statutory sexual assault, aggravated indecent assault, indecent assault, indecent exposure, and corruption of minors. For the reasons set forth below, we affirm.

In February 2018, Appellant, who was 66 years old, was charged in CP-26-CR-0000384-2018 (CR-384-2018) with seven counts of IDSI, seven counts of sexual assault, seven counts of indecent assault, and seven counts of corruption of minors arising out of sexual activity with a 17-year-old boy (Minor 1). In February 2018, Appellant was also charged in CP-26-CR-0000385-2018 (CR-385-2018) with attempted rape, sexual assault, four counts of IDSI, six counts of statutory sexual assault, four counts of aggravated indecent assault, six counts of indecent assault, two counts of indecent exposure, and four counts of corruption of minors arising out of sexual activity with a 13-year-old boy (Minor 2), who was Minor 1's younger brother.

Both cases were tried to a jury from April 1, 2019 to April 3, 2019. At trial, Minor 2 testified that beginning in the summer of 2017, he did construction work for Appellant and was at Appellant's house approximately 10 times. N.T., 4/2/19, at 12-15. Minor 2 testified that on two occasions, Appellant pulled Minor 2's pants and underwear down and put his finger in Minor 2's anus and forced Minor 2 to kiss him. *Id.* at 18-20. Minor 2 testified that on one occasion, Appellant held Minor 2 down and tried to insert his penis in Minor 2, despite Minor 2's objection. *Id.* at 20-22, 35-36. Minor 2 also

testified that Appellant took a shower with Minor 2 on two occasions and put his mouth on Minor 2's penis, that Appellant put his tongue in Minor 2's anus twice, and used a pink dildo on Minor 2. *Id.* at 22-24. Minor 2 testified that Appellant had two laptop computers and that Appellant showed him video of Appellant and another man engaged in sex acts on one of the computers, and identified a photograph of one of the computers. *Id.* at 24-25, 29. Minor 2 testified that Appellant sometimes paid him when he came to Appellant's house and that he did not report what was happening for a while because Appellant threatened that "if any of us told, he would kill us" and he was scared. *Id.* at 23, 25-26, 33. Minor 2 testified that he reported what was happening after another person who worked for Appellant, Charlie Thorpe, walked in on Appellant wrestling on Appellant's bed with Minor 2, who was in his underwear. *Id.* at 16-18.

Minor 1 testified that he also did construction work for Appellant and was at Appellant's house approximately six or seven times. N.T., 4/2/19, at 41-43. Minor 1 testified that on those six or seven occasions, Appellant showed him videos on Appellant's computer of people having sex and pulled Minor 1's pants down and performed oral sex on Minor 1. *Id.* at 43-48, 50, 59. In addition, Minor 1 testified that Appellant repeatedly touched Minor 1's penis over his clothes one day at a job site. *Id.* at 61-62. Minor 1 also testified that on one occasion, he saw Appellant kissing Minor 2 in Appellant's bedroom. *Id.* at 45-46. Minor 1 testified that Appellant never threatened

him, but that Appellant told him not to tell anyone and paid Minor 1 $50 extra each time Minor 1 came to the house in addition to his pay for the construction work. *Id.* at 48-50, 62. Minor 1 identified a photograph of the computer that Appellant used to show him sex videos. *Id.* at 52, 56.

Thorpe testified that one day in late November 2017, after he and Minor 2 had been painting a nativity set at Appellant's house, he went in the house and saw Appellant fondling Minor 2, who was in his underwear. N.T., 4/2/19, at 65-68, 72-73. Thorpe testified that after this incident, he had discussions with both Minor 1 and Minor 2. *Id.* at 69-70. Appellant objected to Thorpe's testimony about these conversations as hearsay, but the trial court overruled the objection and held that Minor 1's and Minor 2's statements to Thorpe were admissible as prior consistent statements to rebut an inference of recent fabrication. *Id.* at 70. Thorpe then testified that Minor 2 told him that Appellant touched him with dildos and that Appellant threatened him with a gun. *Id.* at 70-71. Thorpe testified that Minor 1 told him "basically the same things." *Id.* at 71. Thorpe later testified on cross-examination that Minor 2 told him that Appellant fondled Minor 2's anus and that Appellant made Minor 2 perform oral sex on him. *Id.* at 77.

Halie Gray, a waitress who knew Minor 1, Minor 2 and Appellant, was also called by the Commonwealth to testify to conversations with Minor 1 and Minor 2. Appellant objected to this testimony as hearsay, and the trial court again overruled the objection on the grounds that it was admissible as a prior

consistent statement. N.T., 4/2/19, at 83. Gray then testified that while she was taking Minor 2 to the police station, Minor 2 started telling her "about watching videos on the computer, about the toys that was used on him," "[a]bout finger penetration," and that Appellant would pay him afterwards. *Id.* at 84. Gray testified that she spoke to Minor 1 the next day and "asked [Minor 1] if it happened and he said, yes." *Id.* at 85. Gray also testified that Appellant had previously told her that Minor 2 slept in the same bed with him. *Id.* at 84-85.

Pennsylvania State Police Trooper Terrance Crowley testified concerning his investigation of Minor 1's and Minor 2's accusations and identified a pink sex toy and two computers seized from Appellant's home pursuant to a search warrant. N.T., 4/2/19, at 91-97. Trooper Crowley testified that adult pornography was found on the computers, but that no child pornography was found on the computers. *Id.* at 140. Trooper Crowley also testified concerning his interview of Appellant after Appellant was arrested and identified the *Miranda*[1] warnings that he read to Appellant and that Appellant signed before he questioned Appellant. *Id.* at 98-101. Trooper Crowley testified that Appellant did not appear to be impaired or under the influence of drugs or alcohol at the time of the interview and that he did not threaten Appellant or promise Appellant anything. *Id.* at 100-01.

_____

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

The audio and video recording of Trooper Crowley's interview of Appellant was played to the jury without any objection by Appellant. N.T., 4/2/19, at 102-36.[2] In this interview, Appellant admitted that he and Minor 2 performed oral sex on each other on more than one occasion in 2017, that his hand touched Minor 2's "butt" and his finger touched Minor 2's anus, and that he licked Minor 2 "[d]own below his balls," but he denied that he penetrated Minor 2 or attempted to penetrate Minor 2 with anything and denied that he licked Minor 2's anus. *Id.* at 106-07, 110-21, 125-26, 131-35. Appellant also admitted that he "jacked [Minor 1] off to get him off" on three occasions when Minor 1 was 17 and that Minor 1 consented to this sexual activity. *Id.* at 127-29.

At the close of its case, the Commonwealth moved for admission of a number of the exhibits that witnesses had identified, including the recording of Appellant's interview, the computers seized from Appellant's house, and the *Miranda* warnings and waiver form signed by Appellant. Appellant objected to admitting the computers and the *Miranda* form in evidence. N.T., 4/2/19, at 141-43. The trial court overruled these objections and admitted the computers and *Miranda* form in evidence, but directed that the computers would not be given to the jury. *Id.*

---

[2] Appellant had filed a pre-trial motion to suppress the recorded statement that was denied prior to trial.

Appellant testified in his own defense and denied engaging in any sexual contact with Minor 1 or Minor 2. N.T., 4/3/19, at 11-13. Appellant testified that he had taken a sleeping pill just before he was interviewed by Trooper Crowley and that Trooper Crowley promised him that if he just admitted a few things he would be released and would only pay a small fine. *Id.* at 10-11. Appellant had a statement that he had prepared and wanted to read at the end of his direct testimony. *Id.* at 15. The trial court did not allow Appellant to read the statement. *Id.* Appellant also called Minor 1's and Minor 2's father to testify about a statement the father signed, but the father testified that the paper was blank when he signed it, that he cannot read, and that Appellant asked him to sign the paper. *Id.* at 33-36. Minor 1's and Minor 2's father also testified that Appellant offered to pay him $1,000 if he could have the charges dropped. *Id.* at 36-37.

Trooper Crowley, on rebuttal, denied that he made any promises to Appellant before the interview and specifically denied that he told Appellant that Appellant would go home with a fine if he admitted a few things. N.T., 4/3/19, at 44-45.

On April 3, 2019, the jury convicted Appellant of all charges in both cases. On April 9, 2019, the trial court sentenced Appellant to consecutive terms of imprisonment of $6^1/_2$ to 15 years for the first IDSI conviction in CR-384-2018 and $6^1/_2$ to 15 years for the attempted rape conviction in CR-385-2018, for an aggregate sentence of 13 to 30 years' imprisonment. CR-384-

2018 Count 1 Sentencing Order ¶4; CR-385-2018 Count 1 Sentencing Order ¶4. The trial court imposed no additional penalty for the other convictions. CR-384-2018 Counts 2 Through 28 Sentencing Order; CR-385-2018 Counts 2 Through 28 Sentencing Order. The trial court also imposed lifetime sex offender registration on Appellant under the Sex Offender Registration and Notification Act (SORNA), 42 Pa.C.S. §§ 9799.10-9799.42. CR-384-2018 Count 1 Sentencing Order ¶¶9-22; CR-385-2018 Count 1 Sentencing Order ¶¶9-22.

Appellant did not file any post sentence motions in either case. Appellant filed timely notices of appeal on April 29, 2019, but this Court dismissed those appeals on October 3, 2019 for failure to file a brief. On February 13, 2020, Appellant filed petitions under the Post Conviction Relief Act.[3] PCRA counsel for Appellant was appointed and filed amended PCRA petitions seeking reinstatement of Appellant's appellate rights, which the trial court granted by order entered February 8, 2021. These timely appeals followed.

In these appeals, which this Court consolidated *sua sponte*, Appellant presents the following issues for our review:

> 1. Whether Appellant's reporting requirements under the Pennsylvania Sexual Offender Registration and Notification Act (SORNA) II are constitutional?

---

[3] 42 Pa.C.S. §§ 9541–9546.

2. Whether the trial court erred by allowing Charles Thorpe and Hallie Gray to testify about statements allegedly made by the alleged victim [Minor 2] under the prior consistent statement exception to the hearsay rule?

3. Whether the court erred in admitting into evidence Commonwealth's Exhibit C, two laptop computers, because said computers contained no relevant information?

4. Whether the court erred in admitting Commonwealth's Exhibit D into evidence, the Rights, Warning and Waiver form allegedly signed by the Appellant, because said document was not properly authenticated?

5. Whether the court erred in preventing appellant from reading a narrative that he prepared to the jury?

Appellant's Brief at 3. We address Appellant's second, third, fourth, and fifth issues first, since they challenge Appellant's convictions, and then address Appellant's first issue, which challenges only a portion of his sentence.

Appellant's second, third, fourth, and fifth issues all involve claims of error in the admission or exclusion of evidence. A trial court's rulings regarding the admissibility of evidence generally may be reversed only on a showing that the trial court abused its discretion. *Commonwealth v. Raboin*, 258 A.3d 412, 422 (Pa. 2021); *Commonwealth v. Johnson*, 42 A.3d 1017, 1027 (Pa. 2012). The admission of out of court statements, however, requires examination of the language of our rules of evidence, and therefore involves a question of law as to which our standard of review is *de novo* and our scope of review is plenary. *Raboin*, 258 A.3d at 422; *Commonwealth v. Brown*, 52 A.3d 1139, 1176 (Pa. 2012).

We agree that the trial court erred in admitting Thorpe's and Gray's testimony concerning Minor 2's prior statements about Appellant's sexual activities with him.[4] The trial court admitted this evidence on the ground that the statements were admissible as prior consistent statements to corroborate their testimony because Appellant had challenged Minor 2's credibility on cross-examination. N.T., 4/2/19, at 70, 83; Trial Court Opinion at 3. The circumstances under which prior consistent statements are admissible to corroborate a witness's testimony, however, were not present with respect to these statements.

The admissibility of prior consistent statements is governed by Pennsylvania Rule of Evidence 613(c), which provides:

> (c) Witness's Prior Consistent Statement to Rehabilitate. Evidence of a witness's prior consistent statement is admissible to rehabilitate the witness's credibility if the opposing party is given an opportunity to cross-examine the witness about the statement and the statement is offered to rebut an express or implied charge of:
>
> (1) fabrication, bias, improper influence or motive, or faulty memory and the statement was made before that which has been charged existed or arose; or

_____

[4] Appellant appears in the argument section of his brief to also contend that the admission of Thorpe's and Gray's testimony concerning Minor 1's statements was error. Appellant's Brief at 17-18. Any issue concerning Minor 1's prior consistent statements, however, is waived because Appellant raised only a claim that the admission of Minor 2's prior statements was error in his Pa.R.A.P. 1925(b) statement. Concise Statement of Issues on Appeal ¶2; Pa.R.A.P. 1925(b)(4)(vii)("Issues not included in the [concise statement of errors complained of on appeal] and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived").

(2) having made a prior inconsistent statement, which the witness has denied or explained, and the consistent statement supports the witness's denial or explanation.

Pa.R.E. 613(c). Under Rule 613(c)(1), a prior consistent statement is admissible to rebut a claim that the witness's testimony is false or inaccurate only where the statement was made before the motive to lie or reason for the claimed inaccuracy arose. **Commonwealth v. Busanet**, 54 A.3d 35, 66-67 (Pa. 2012); **Commonwealth v. Bond**, 190 A.3d 664, 667-70 (Pa. Super. 2018); **see also** Pa.R.E. 613(c)(1) (requiring that "the statement was made before that which has been charged existed or arose"). Although Rule 613(c)(2) does not require that the prior consistent statement pre-date the motive to fabricate or any other event, it applies only where the opposing party has claimed that the witness has "made a prior inconsistent statement." Pa.R.E. 613(c)(2).

Here, while Appellant contended that Minor 2's accusations against him were fabricated, the statements to Thorpe and Gray were not made before the alleged motive to fabricate arose. Rather, they were made shortly before Minor 2 spoke to the police; indeed, Minor 2's statements to Gray were made on the way to the police station. N.T., 4/2/19, at 69-71, 74-75, 83-84. There was no suggestion that any event occurred after the statements to Thorpe and Gray that created any animosity between Minor 2 and Appellant or that gave him a motive to fabricate accusations that did not exist at the time that he made the statements to Thorpe and Gray.

Nor was there any suggestion that Minor 2's memory of the sex acts was faulty. Appellant did suggest that Minor 2's testimony that he was threatened by Appellant was inconsistent with his statement to police in December 2017 and could be due to faulty memory. N.T., 4/2/19, at 33. Thorpe's testimony that Minor 2 told him in November 2017 that Appellant threatened Minor 2 was therefore admissible to refute the claim that Minor 2's recollection of this in 2019 was faulty. Thorpe's and Gray's testimony, however, far exceeded that scope and included statements concerning sex acts as to which there was no claim that Minor 2's testimony at trial added details that he did not report in 2017. Because the statements do not pre-date any motive to fabricate and there was no contention that Minor 2's trial testimony concerning the sex acts was a product of faulty memory, Thorpe's and Gray's testimony concerning Minor 2's statements about Appellant's sexual activity with him was not admissible under Rule 613(c)(1). **Bond**, 190 A.3d at 669-70.

These prior statements were likewise not admissible under Rule 613(c)(2). A claim that Minor 2 had a motive to fabricate accusations of sexual abuse or that he lied does not constitute a charge that he made a prior inconsistent statement and does not make Thorpe's or Gray's testimony admissible as an explanation or denial of a prior inconsistent statement. **See Bond**, 190 A.3d at 670 (rejecting argument that prior consistent statement was admissible under Rule 613(c)(2) where defendant's claim was that child

witness had fabricated the accusations from the outset and child witness had not explained or denied any prior inconsistent statement). While Appellant did assert that Minor 2's trial testimony that he did not see Appellant's penis was inconsistent with the details in his statement to the police, N.T., 4/2/19, at 32, neither Thorpe nor Gray testified that Minor 2 told them anything related to that alleged inconsistency.

We conclude, however, that the trial court's error in admitting this evidence does not require reversal of Appellant's convictions because the error was harmless. An appellate court may sustain a judgment despite the erroneous admission of evidence of prior consistent statements of witnesses, if it is convinced beyond a reasonable doubt that the admission of the statements was harmless, and may affirm on harmless error grounds even though the trial court and Commonwealth have not raised that issue.[5] **Commonwealth v. Hamlett**, 234 A.3d 486, 492-93 (Pa. 2020); **Bond**, 190 A.3d at 670-71, 673. An error may be harmless where the evidence in question did not prejudice the defendant or any prejudice was *de minimis*, where the evidence in question was cumulative of other, substantially similar evidence that was properly admitted, or where the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect was so insignificant by comparison that the error could not have

_____

[5] The Commonwealth filed no brief in these appeals.

contributed to the verdict. **Commonwealth v. Poplawski**, 130 A.3d 697, 716 (Pa. 2015); **Commonwealth v. Taylor**, 209 A.3d 444, 450 (Pa. Super. 2019); **Commonwealth v. Radecki**, 180 A.3d 441, 461 (Pa. Super. 2018).

The effect of the testimony concerning Minor 2's prior statements would be insignificant in CR-384-2018, because that case related solely to Appellant's abuse of Minor 1 and none of Minor 2's statements involved Appellant's conduct with Minor 1. Even in CR-385-2018, the prejudicial effect of the prior statements concerning Appellant's sex acts with Minor 2 was *de minimis* and insignificant by comparison to the other evidence of guilt. The testimony concerning these prior statements was brief and contained limited detail and the trial court instructed the jury that this evidence could be considered only with respect to Minor 2's credibility. N.T., 4/2/19, at 70-71, 77, 83-84; N.T., 4/3/19, at 56. The prior statements were also immediately before and contemporaneous with the reporting of the crime to the police, and therefore showed little beyond the fact that Minor 2 reported the crimes to which he testified at trial.

Most importantly, this was not a case where the only evidence of guilt was the victim's testimony, which was denied by the defendant. In addition to Minor 2's testimony, the evidence against Appellant included Appellant's recorded statement in which he admitted committing many of the sex acts in question with Minor 2. The sexual assaults referenced in the prior statements were all either acts to which Minor 2 testified or acts that Appellant admitted

committing in his interview. While Appellant denied the truthfulness of his recorded statement in his trial testimony, given his lengthy and detailed admissions, any possible erroneous bolstering of Minor 2's credibility from the prior statements is insignificant in comparison.

Indeed, the aspect of the prior statements that Appellant argues was prejudicial was Thorpe's testimony that Minor 2 told him that Appellant threatened him. Appellant's Brief at 18. As we have already held, however, that testimony was admissible under Rule 613(c)(1) to refute Appellant's suggestion that Minor 2's testimony concerning the threats was unreliable because he had failed to mention it to the police closer to the time of the events. There is, moreover, nothing in the record indicating that the Commonwealth emphasized the erroneously admitted prior statements in its arguments to the jury.[6]

Appellant's remaining claims of error with respect to the admission or exclusion of evidence are all without merit. In his third issue, Appellant contends that the trial court erred in admitting the computers that the police found in Appellant's room because the computers allegedly were not relevant. Contrary to Appellant's contention, the computers were relevant because Minor 1 and Minor 2 testified that Appellant showed them sex videos on those computers as part of his sexual activities with them. N.T., 4/2/19, at 24-25,

_____

[6] Neither the opening statements nor the closing statements were transcribed. N.T., 4/2/19, at 8-9; N.T., 4/3/19, at 48.

29, 44-45, 52. Indeed, Trooper Crowley testified that sexual material was found on the computers. *Id.* at 140. The trial court therefore did not abuse its discretion in admitting the computers in evidence.

In his fourth issue, Appellant argues that the trial court erred in admitting the *Miranda* warnings and waiver form signed by Appellant because it allegedly was not properly authenticated. That contention is contrary to the record. Not only did Trooper Crowley identify the *Miranda* form and testify that he read it to Appellant and that Appellant signed it, but the recording of Appellant's statement shows that Trooper Crowley accurately read it aloud to Appellant, that Appellant also read a portion out loud, that Appellant acknowledged that he understood the warnings and the waiver of his rights, and that Appellant then signed the form. N.T., 4/2/19, at 99-100, 103-04. Because it was fully and properly authenticated, the trial court did not err in admitting the *Miranda* form in evidence.[7]

In his fifth issue, Appellant asserts that the trial court erred in preventing Appellant from reading a narrative that he had prepared during trial to the jury during his direct testimony. This issue likewise fails. A

_____

[7] Although Appellant in his argument of this issue also briefly asserts that the trial court erred in allowing Appellant's recorded statement in evidence, Appellant's Brief at 21, that issue is not before us, as Appellant raised only the admission of the *Miranda* form and did not raise the admission of the recorded statement itself or the denial of his motion to suppress the recorded statement in his Rule 1925(b) statement. *See* Concise Statement of Issues on Appeal; Pa.R.A.P. 1925(b)(4)(vii).

defendant does not have a right in a trial of guilt or innocence to read a prepared statement to the jury, and requiring the defendant to testify in response to questions is not an abuse of the trial court's discretion to control the mode of interrogation of witnesses and presentation of evidence. *Commonweallth v. Stollar*, 84 A.3d 635, 645-51 (Pa. 2014); *Commonwealth v. Jermyn*, 533 A.2d 74, 78-80 (Pa. 1987). Moreover, Appellant has not even shown that the contents of the statement would be relevant and admissible. The statement that Appellant sought to read was not provided to the trial court, N.T., 4/3/19, at 15, and does not appear in the record.

Appellant, in his remaining, first issue, contends that the reporting requirements of Subchapter H of SORNA that were imposed on him are unconstitutional and notes that this Court in *Commonwealth v. Mickley*, 240 A.3d 957 (Pa. Super. 2020) vacated a denial of a constitutional challenge to Subchapter H of SORNA and remanded for an evidentiary hearing. We conclude that this challenge is barred by waiver.

Challenges to the constitutionality of SORNA are waived if they are not raised in the trial court before sentencing or by post sentence motion. *Commonwealth v. Reslink*, 257 A.3d 21, 25 (Pa. Super. 2020). In *Mickley*, the defendant had preserved his SORNA challenge by filing a post sentence motion in the trial court seeking to bar application of SORNA. 240 A.3d at 959. Here, in contrast, Appellant raised no SORNA challenge in the trial court;

he filed no post sentence motion and filed no pretrial or pre-sentence motion asserting that SORNA was unconstitutional or seeking to bar SORNA's application. Rather, Appellant raised his challenge to SORNA for the first time in his Pa.R.A.P. 1925(b) statement. Concise Statement of Issues on Appeal ¶1. Raising an issue for the first time in a Rule 1925(b) statement, however, is insufficient to prevent waiver of an issue that the appellant failed to raise while the case was pending in the trial court. *Steiner v. Markel*, 968 A.2d 1253, 1257 (Pa. 2009); *Commonwealth v. Smith*, 213 A.3d 307, 309 (Pa. Super. 2019); *Commonwealth v. Rodriguez*, 174 A.3d 1130, 1145 n.6, 1146 n.8 (Pa. Super. 2017).

Because the trial court's error in admitting evidence of prior consistent statements was harmless and all of Appellant's other issues are either without merit or waived, we affirm Appellant's judgments of sentence.

Judgments of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/19/2022

- 18 -